**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PAUL BULTMEYER, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 13-2771 (JLL) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**LINARES**, District Judge:

Presently before the Court is the motion of Paul Bultmeyer ("Petitioner") brought pursuant to 28 U.S.C. § 2255.  (ECF No. 1.)  Respondent, United States of America ("Respondent"), filed an Answer (ECF No. 7) and Petitioner filed a Reply (ECF No. 8).  For the following reasons, the Court denies Petitioner's motion.

## I.  BACKGROUND

Petitioner, along with owner Arthur Piacentini, operated Ameripay LLC, a payroll company located in Rochelle Park, New Jersey.  (Information p. 1).  Ameripay handled payroll and tax withholding services for numerous private companies and public entities located throughout New Jersey.  (*Id.*).  In or about 2004, Petitioner and Piacentini incorporated Sherbourne Capital Management, Ltd., as well as the related entity Sherbourne Financial, Ltd, which purported to be investment companies.  (*Id.*)  Neither Sherbourne entity was registered with Federal or State regulators.  (*Id.*).  Through the course of its operations, Ameripay amassed a large deficit, which Petitioner argues arose out of IRS tax penalties, losses arising out of a trademark suit, and losses from several frauds committed by Ameripay clients.  *United States v.*

*Bultmeyer*, 483 Fed. Appx. 750, 751 (3d Cir. 2012).   In an attempt to conceal the deficit, Petitioner and his co-defendant Piacentini diverted several million dollars from Ameripay clients.   *Id.*   They also solicited investments into the Sherbourne entities from retirees, promising that such moneys would be invested into private placement debt, highgrade corporate bonds, preferred stock, and government securities.   *Id.*   These moneys were instead loaned back to Ameripay to help cover its deficits without notice to Sherbourne's clients.   *Id.*

On May 9, 2010, Petitioner pled guilty before this Court to a one count information charging him with conspiracy to commit wire fraud arising out of the diverting of funds from Ameripay clients and Sherbourne's comingling with Ameripay rather than investing as promised. *Id.* at 751-52.   This plea arose out of a plea agreement between petitioner and the United States Attorney's office, which Petitioner signed on March 18, 2010.   (Plea Agreement p. 5).   Pursuant to the agreement, Petitioner pled guilty to the one count information, and the Government agreed not to bring any other charges arising out of these events.   (*Id.* at 1).   As part of the plea agreement, Petitioner stipulated that the loss amount was between seven and twenty million dollars, and that the number of victims was between fifty and two-hundred and fifty.   (*Id.* at 6). Petitioner also stipulated that, if this Court accepted these stipulations, Petitioner would waive his right to appeal or collaterally attack the finding as to loss amount.   (*Id.*).   In spite of this stipulation, Petitioner and the U.S. Attorney agreed that petitioner could argue the loss amount at sentencing and during the PSR determinations.   *Bultmeyer*, 483 Fed. Appx. at 753.   Following a Rule 11 motion, this Court held a plea hearing at which it thoroughly explained to petitioner the rights he was waiving by agreeing to the plea, the nature of the crime to which he was pleading, the elements thereof, and the Government's burden should the matter instead proceed to trial, all

2

of which petitioner stated he understood.    (Plea Colloquy 8:7-31:15).    Petitioner, at the plea

hearing, also stated that he had been provided an opportunity to discuss all of this information with

counsel, and was satisfied with counsel's responses to his questions.    (*Id.*).

This Court held a sentencing hearing on March 18, 2011.    At the hearing, defense counsel

argued at length for a lesser loss amount, and argued that, contrary to the PSR, an abuse of trust

enhancement was not appropriate.    (Sentencing Tr. 17-18, 27-29).    Following argument, this

Court

> carefully considered the PSR, sentencing memoranda submitted by
> both parties, and the arguments of counsel.    The District Court
> found that the loss exceeded $7,000,000, warranting a 20-level
> enhancement, and that [petitioner] was in a position of trust,
> warranting a two-level enhancement.    After considering the
> statutory factors set forth in 18 U.S.C. § 3553(a), the District Court
> granted a downward departure and sentenced [petitioner] to 60
> months imprisonment.
>
> [*Bultmeyer*, 483 Fed. Appx. at 752.]

Petitioner thereafter appealed his sentence to the Third Circuit, contesting the loss amount, the

abuse of trust enhancement, and the procedural and substantive reasonableness of his sentence.

The Third Circuit affirmed the judgment of this Court on April 24, 2012.    *Id.* at 750.

On April 30, 2013, petitioner filed the instant motion to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. §2255, his first habeas petition.    *Bultmeyer v. United States*, Civil

Action No. 13-2771.    Respondent filed an answer to the motion on January 17, 2014 (ECF No.

7).    Petitioner filed a reply brief on February 19, 2014.    (ECF No. 8).    In his motion, Petitioner

argues that (1) his sentence should be vacated because the Sentencing Guidelines coerced him into

pleading guilty, (2) this Court erred in determining the loss amount it did as well as in (3) finding

an abuse of trust enhancement, (4) his sentence was procedurally and substantively unreasonable,

3

(5) this Court was biased in making its determinations at sentencing (raised here for the first time), (6) his counsel was ineffective, and (7) that this court erred in finding abuse of trust and its loss calculation without a jury verdict or admission on those facts which constitutes an *Apprendi/Alleyne* error. As Petitioner's arguments are either barred, without merit, or plainly contradicted by the record, Petitioner's motion is denied.

## II.  DISCUSSION

### A.  Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.   Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Unless the moving party claims a jurisdictional defect or a Constitutional violation, the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir.) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

4

**B.  Analysis**

**1.  An evidentiary hearing is not required**

An evidentiary hearing is required by §2255 "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. §2255(b); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).  If the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by a petitioner, and/or indicate that petitioner is not entitled to habeas relief as a matter of law, no evidentiary hearing is required.  *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985).  For the reasons explained herein, claims brought by Petitioner in this case are all either improperly raised, without merit, or flatly contradicted by the record, and therefore the record establishes that Petitioner is not entitled to relief as a matter of law.  No evidentiary hearing is therefore required on Petitioner's claims.

**2.  The "coercive" effects of the United States Sentencing Guidelines**

Petitioner first argues that his guilty plea was coerced.  Petitioner's argument relies on his supposition that the sentence reduction provided to defendants who plead guilty by *U.S.S.G.* § 3E1.1 (Acceptance of Responsibility) pressures criminal defendants into guilty pleas and dissuades them from pursuing their Sixth Amendment right to trial.  While the acceptance of responsibility reduction undoubtedly does incentivize criminal defendants to plead guilty in order to avoid a harsher sentence, that incentive is entirely constitutional.  *See United States v. Cohen*, 171 F.3d 796, 804-06 (3d Cir. 1999) ("Sentencing Guideline 3E1.1 creates . . . an incentive for defendants

5

to plead guilty, and under [*Corbitt v. New Jersey*, 439 U.S. 212 (1978)], this incentive is constitutional."). As the Supreme Court has noted, "[t]he plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but . . . the government 'may encourage a guilty plea by offering substantial benefits in return for the plea.'" *U.S. v. Mezzanato*, 513 U.S. 196, 209-210 (1995) (quoting *Corbitt*, 439 U.S. at 219). As the Third Circuit has found that the incentive to plead guilty provided by *U.S.S.G.* § 3E1.1 is analogous to that upheld by the Court in *Corbitt*, and therefore does not impugn a defendant's Sixth Amendment right to trial, the pressure petitioner alleges induced him to plead guilty is insufficient to permit a finding of a constitutional violation or miscarriage of justice sufficient to warrant habeas relief. *Cohen*, 171 F.3d at 805.

### 3. Loss Calculations

Petitioner next argues that this Court erred in making its determinations as to loss at sentencing. As noted by the Third Circuit in Petitioner's direct appeal, petitioner's plea agreement included a stipulation that the loss amount was between $7 million and $20 million, and an appellate waiver which, if valid, prevents Petitioner from attacking the Court's acceptance of that stipulated amount either directly or collaterally. *See Bultmeyer*, 483 Fed. Appx. at 752-53. As Petitioner's waiver was knowing, voluntary, and the waiver would not work a miscarriage of justice, Petitioner is barred from challenging the loss calculation in this petition. *See United States v. Mabry*, 536 F.3d 231, 236-37 (3d Cir. 2008).

Criminal defendants "may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *Id.* at 236.

6

The right to appeal is among those rights which can be waived, and such waivers are not violative of public policy. *Id.* at 236-37. An appellate or collateral waiver will be enforced provided it is "entered into knowingly and voluntarily" and its enforcement "does not work a miscarriage of justice." *Id.* at 237. A waiver will be found to have been knowing and voluntary where the district court "inform[s] the defendant of and determine[s] that the defendant under[stood] . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." *Id.* at 239. In determining whether an alleged error would render enforcement of an otherwise valid waiver a miscarriage of justice, the Court must consider the clarity of the error, its gravity, its character, the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the government acquiesced in the result. *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001).

The transcript of the plea colloquy clearly demonstrates that Petitioner entered his plea, which included the appellate waiver, knowingly and voluntarily. During the colloquy, Petitioner, an educated man who possesses a law degree, was instructed as follows:

> THE COURT: . . . if [the Court] accept[s] any of the stipulations we discussed, [including the stipulation that the loss amount was between $7 million and $20 million], any of the facts that you['ve] agree[d] to be true, if [the Court] accept[s] them as a basis for your sentence, and [the Court] accept[s] them as one of the things that I take into consideration for your sentence, you are waiving your right to appeal based on the fact that [the Court] accepted any of those stipulations in determining your sentence.
>
> Do you understand that?
>
> [Petitioner]: Yes, I do, your Honor.
>
> THE COURT: Have you had an opportunity to discuss that with your attorney?

7

[Petitioner]:   Yes, I have, your Honor.

(Plea Colloquy Tr. 25:10-22).

This portion of the colloquy, when coupled with Petitioner's statements that he understood the proceedings, understood the plea, and had discussed the plea and surrounding documents with his attorney to his satisfaction, clearly demonstrates that Petitioner's knowing and voluntary agreement to the appellate/collateral attack waiver. *Mabry*, 536 F.3d at 236-37, 239.   The Court clearly explained the waiver, and Petitioner expressed his understanding of, and agreement to, that portion of the plea agreement.   As such, Petitioner's knowing and voluntary waiver of his appellate and collateral rights was valid.   *Id.; Bultmeyer*, 483 Fed. Appx. at 752-53.

As Petitioner's waiver was knowing and voluntary, the waiver is enforceable so long as enforcement would not result in a miscarriage of justice.   *Mabry*, 536 F.3d at 237.   Looking at the specific circumstances of this case using the common sense approach suggested by *Mabry* and *Khattak*, the record does not support Petitioner's assertion that the waiver here represents a miscarriage of justice.   Petitioner knowingly and voluntarily entered into his plea agreement, including the waiver.   Even though Petitioner had already stipulated to a loss amount in excess of seven million dollars, this Court provided Petitioner with the opportunity to argue for a lesser amount and carefully considered the arguments of both defense counsel and the Government in concluding that the PSR calculation was the proper metric for loss in this instance.   Thus, the facts do not suggest that a miscarriage of justice occurred in this instance.   As Petitioner's waiver was knowing and voluntary, and as there is no evidence that a miscarriage of justice would result from enforcing the waiver, Petitioner is barred from attacking the loss calculation in this habeas petition. *Id.; Bultmeyer*, 483 Fed. Appx. at 752-53.

8

### 4. Ineffective Assistance of Counsel

Petitioner next argues that his trial and appellate counsel were constitutionally defective. Claims of ineffective assistance of counsel under the Sixth Amendment are governed by the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, defendant must first show that "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. Second, defendant must show that counsel's deficient performance prejudiced the defense such that counsel's errors were so serious as to "deprive defendant of a fair trial . . . whose result is reliable." *Id.*

In determining whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). Thus, a petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" considering all the circumstances. *Id.* Such reasonableness is determined based on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* Judicial scrutiny of counsel's performance "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Even if a petitioner shows deficiency, he must still demonstrate prejudice to his defense. *Id.* at 692. Defendant must affirmatively prove prejudice. *Id.* at 693. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* Petitioner must show that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would

have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Petitioner argues that his counsel was ineffective in the following four instances: 1) in allowing him to plead guilty to wire fraud which Petitioner argues was not supported by the facts; 2) by not objecting to the Court's loss determination; 3) by not properly opposing the Court's abuse of trust enhancement; and 4) in allowing Petitioner to sign a plea agreement which included an appellate waiver.   Petitioner first claims that his counsel failed to properly inform of the elements of the crime of wire fraud such that he could determine that the facts did not support the charge.   Petitioner claims that "had I known the US Attorney had the burden of proving to a jury that I participated in a scheme to defraud Ameripay clients, had the requisite intent to do so, and in furtherance of the fraud, caused interstate 'wire' transmissions, I would have rejected the guilty plea."   Petitioner's claim to ignorance is belied by the record.   The information with which Petitioner was charged and which formed the basis of the plea agreement clearly sets out the elements of wire fraud.   (Information p.3, point 3).   During the plea colloquy, Petitioner stated on the record that he had received these materials, and had discussed them to his satisfaction with his attorney.   (Plea colloquy 8:7-19).   Petitioner also stated that he had a clear understanding of the offer.   (*Id.* 9:2-5).   Further, Petitioner informed the court that he had discussed the wire fraud charge with his attorney.   (*Id.* 13:9-15).

As to Petitioner's contention that he was unaware of the Government's burden, this Court informed defendant of this right prior to his guilty plea.   (*Id.* 19:17-24).   Likewise, this Court clearly described the essential elements that would need to be proven by the Government had Petitioner proceeded to trial:

> They would have had to prove to a jury beyond a reasonable doubt that at least two people agreed to commit the offense of wire fraud, that you were a party to or member of that agreement, and that you joined that agreement or conspiracy knowing of its objective[.]
>
> With regard to the actual charge or the substantive charge of wire fraud, they would have had to prove that someone devised or intended to devise a scheme or an artifice to defraud another person or entity of money or property, that you knowingly and willfully participated in that scheme or artifice with the specific intent to defraud another of money or property, and that for the purpose of executing or attempting to execute that scheme, the use of interstate wires was involved[.]

(*Id.* 26:7-25).

In response to this thorough explanation, Petitioner stated that he understood the Government's burden in his case. (*Id.* 27:2-4). Petitioner thereafter admitted to the recitation of facts establishing the crime of wire fraud, including his involvement with Ameripay, Ameripay's solicitation of business from public entities, the agreement between himself and Arthur Piacentini to divert "millions of those dollars to satisfy the payroll obligations" of other clients, and petitioner's involvement in the solicitation and improper use of investor funds by the Sherbourne entities under petitioner's controls, as well as Petitioner's willful participation in that scheme. (*Id.* 27:18-29:6). The Government thereafter stated that it "would be able to prove that the use of interstate wires were used to solicit Sherbourne investors" in connection with the fraud. (*Id.* 29:19-22). It was only after these facts were admitted by Petitioner and established on the record that Petitioner pled guilty.

These facts clearly establish that, prior to his plea of guilty, Petitioner was fully aware of the elements of a wire fraud charge, including the use of interstate wires, that he had discussed them with his attorney, and that he understood the nature of the charges and the facts which

11

supported them.   Petitioner's claim that he was unaware and would have made a different choice had his attorney properly informed him is therefore based on a false presumption of Petitioner's ignorance, and is therefore meritless.   As Petitioner's first claim of ineffective assistance is based on facts unsupported by the record, petitioner has failed to show how counsel's representation fell below the objective standard of performance as required by *Strickland*.

Petitioner next argues his counsel was ineffective in stipulating to the amount of loss and failing to object to the loss amount during sentencing.   This claim, too, is contrary to the facts in the record.   The record reveals that, although there was a stipulation as to loss amount, defense counsel retained the right to argue for a lower loss amount, which he did at length during both the PSR preparation and during sentencing.   (Sentencing Tr. 17:15-22, 18:17-27:7).   Petitioner also claims that counsel should have objected to the Government's calculation of loss taken from the PSR.   This argument does not take into account the extensive arguments counsel made on petitioner's behalf as to the loss calculation, and appear to be based on a misunderstanding of the requirements of U.S.S.G. § 2B1.1.[1]   Petitioner provides no context nor argument regarding how his counsel failed to meet the objective standard of reasonable representation.   Given counsel's zealous representation of petitioner's calculation of loss at the sentencing hearing, the record establishes that counsel did not fail to represent petitioner's interest as to loss calculation, and that counsel's performance was well "within the wide range of reasonable professional assistance."

---

[1] Petitioner argues that "Loss" should have been solely calculated as "intended loss" and not actual loss, whereas the guideline states that "loss is the greater of actual loss or intended loss."   U.S.S.G. § 2b1.1, comment 3.   Petitioner's arguments regarding the Court's acceptance of the PSR figure fails to account for the guideline's statement that "The Court need only make a reasonable estimate of the loss.   The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence."   *Id.* at comment 3(C).

*Strickland*, 466 U.S. at 689.[2]

Petitioner next argues that his counsel was ineffective in not objecting to the PSR's suggestion, and this Court's conclusion, that the abuse of trust enhancement applied to Petitioner's case given his positions in Ameripay and the Sherbourne entities.   This claim, too, is contradicted by the record.   During sentencing, Petitioner's counsel argued against the abuse of trust enhancement, arguing the very points raised by Petitioner here: that Petitioner's role in Ameripay was limited, that he did not engage in the keeping of the books of the company, and that Petitioner's role in the creation of the loss was limited, arguing that petitioner's role was one of "nonfeasance" rather than malfeasance.   (Sentencing Tr. 27:21-29:13).   Thus, as counsel argued against the abuse of trust enhancement, Petitioner's base assertion that counsel should have done more is insufficient to establish that counsel's representation fell below an objective standard of professional competence.

As to the loss and abuse of trust arguments, one should note that even if Petitioner could prove the first prong of the *Strickland* test, ineffectiveness, he would be patently unable to prove prejudice.   Even had counsel been successful and this Court found that Petitioner had caused a loss less than seven million dollars, and that he had not abused the trust of his investors/clients, the guideline recommended sentence for his lower offense level (26) would still have been between 63 and 78 months, well above the sixty months to which Petitioner was already sentenced. Indeed, that Petitioner's counsel was able to obtain a sentence well below the guideline range

---

[2] Petitioner also claims that counsel failed to raise the loss calculation issue on appeal.   On Appeal, the Third Circuit considered and rejected petitioner's arguments regarding loss amount, finding such claims barred by the appellate waiver in the plea agreement.   As such, petitioner's claim that he was unable to contest loss on appeal appears to be inaccurate as well.   *See Bultmeyer*, 483 Fed. Appx. at 752-53.

found by this court suggests that no prejudice resulted from his representation at sentencing.

Petitioner's final claim of ineffective assistance arises out of the appellate waiver and related stipulations in his plea agreement. Petitioner argues that the mere fact that such an appellate waiver was permitted in and of itself is tantamount to ineffective assistance. Petitioner's argument is predicated on his assumption that this Court would have accepted the PSR's finding as to loss regardless of its reasonableness. Petitioner's argument is flawed in so much as his counsel negotiated a plea agreement in which the appellate waiver was limited only to the loss amount, and even then only applied *if* the PSR concluded that the amount of loss was over $7 million and this Court accepted that number. Petitioner's plea agreement allowed him to contest the loss amount at both the PSR stage and during sentencing proper, which his attorney did. Given the common nature of appellate waivers, often much more broad than the one at issue here, and the Third Circuit's previous holdings that such waivers are not contrary to public policy and are acceptable practice, as well as plaintiff's knowing and voluntary acceptance of the waiver as previously discussed, the record contains no evidence that counsel acted unreasonable in negotiation and recommending the plea agreement. *See Mabry*, 536 F.3d at 236-39. As petitioner's assertions fail to prove that counsel's actions fell outside of the wide range of reasonable professional conduct, petitioner has failed to prove the first prong of the *Strickland* test. 466 U.S. at 689. The Court therefore need not reach the question of what prejudice, if any, may have resulted had petitioner's counsel been deficient in negotiating the plea.

14

**5.  Abuse of Trust**

Petitioner next argues that the Court improperly found the Abuse of Trust enhancement to be applicable to his sentence under *U.S.S.G.* § 3B1.3.  "Errors in the implementation of the Sentencing Guidelines are generally not cognizable in a collateral attack." *United States v. Ruddock*, 82 Fed. Appx. 752, 758 (3d Cir. 2003), *see also United States v. Cepero*, 224 F.3d 256, 267-68 (3d Cir. 2000), *abrogated in part on other grounds*, *Gonzalez v. Thaler*, 132 S. Ct. 641 (2012).  Such an alleged misapplication would only be appropriate in a collateral attack in the event that the allegations presented a constitutional issue.  *Ruddock*, 82 Fed. Appx. at 758.  In support of his assertion that a constitutional error occurred in his case, petitioner argues that the Court's holding in *United States v. Alleyne*, 133 S. Ct. 2151 (2013), required that the abuse of trust question be submitted to a jury.  Petitioner's reliance on *Alleyne*, however, is misplaced. *Alleyne's* holding requires that those facts which increase the prescribed range (the statutory minimum and maximum of an offense) are elements of the crime and must therefore be proven beyond a reasonable doubt.  *Id.* at 2160.  Petitioner's claims deal only with an alteration in the recommended sentence under the Sentencing Guidelines, and have no impact on the statutory minimum or maximum sentence for a wire fraud conviction.  Petitioner's allegations regarding abuse of trust are therefore not cognizable in this habeas petition.

Even were petitioner's claim cognizable, the facts of this clearly establish that the Abuse of Trust enhancement was appropriate.  Such an enhancement is appropriate in situations where "a defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense."  *U.S.S.G.* § 3B1.3.  To find abuse of trust, a court must find that the defendant was in a position of trust, and that he abused

15

that position to significantly facilitate the crime.  *United States v. Nathan*, 188 F.3d 190, 196 (3d Cir. 1999).   Three considerations apply in making that determination:   "1) whether the position allows the defendant to commit a difficult-to-detect wrong; 2) the degree of authority which the position vests in [the] defendant vis-a-vis the object of the wrongful act; and 3) whether there has been reliance on the integrity of the person occupying the position."  *United States v. Starnes*, 583 F.3d 196, 217 (3d Cir. 2009).   As the Third Circuit found on direct appeal, the facts of this case clearly establish that the abuse of trust enhancement was appropriate:

> Bultmeyer argues that he was not in a position of trust because he was not an owner of Ameripay, did not manage the day-to-day operations of the company, did not have access to the books, and had no means of verifying distributions.   While Bultmeyer sold his ownership interest in Ameripay, he was still in a position of trust. Indeed, at Ameripay, Bultmeyer was in charge of the timing and amount of payments due to the IRS.   As such, he was in a position of trust with Ameripay clients and responsible for the transactions at the heart of the fraud.   Further, he was the principal owner of Sherbourne Entities and used his position to solicit investors to funnel money to Ameripay.[3]

*Bultmeyer*, 483 Fed. Appx. at 753.

Thus, the Court's abuse of trust finding provides petitioner no grounds for relief.

## 6.   The Reasonableness of Petitioner's Sentence

Petitioner's also claims that the court's sentence of 60-months was subjectively and objectively unreasonable.   Criminal sentences are reviewed for reasonableness, which

---

[3] While petitioner takes issue with the Third Circuits' characterization that Sherbourne "funneled" money to Ameripay.   As the facts established that, rather than invest the money entrusted to as promised, petitioner instead loaned their money to Ameripay, the Circuit Court's characterization is accurate.

encompasses both a procedural and a substantive component. *United States v. Wise*, 515 F.3d 207, 217-18 (3d Cir. 2008). A sentence is procedurally reasonable where the sentencing court calculates the Sentencing Guidelines range, does not treat that range as mandatory, properly considers the appropriate sentencing factors under 18 U.S.C. § 3553(a), determines its sentence on the basis of established facts, and adequately explains its chosen sentence, including any deviation from the Guidelines range. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). If the sentence is procedurally sound, it is then reviewed for substantive reasonableness, which requires consideration of the totality of the circumstances. *Id.* The "'touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a).'" *Id.* at 568 (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007)).

Petitioner's sentence in this case was entirely reasonable. As the Third Circuit found on direct appeal,

> while Bultmeyer may disagree with the weight the District Court gave to [the § 3553(a) factors], we conclude from our review of the record that the District Court thoroughly considered arguments from both parties. Indeed, the District Court granted a downward departure based on [petitioner's] mitigating factors, while also recognizing that [petitioner] was involved in the fraud for a number of years and the losses to clients were staggering.

*Bultmeyer*, 483 Fed. Appx. at 753-54.

Petitioner also claims that his sentence was unreasonable because he received a sentence of sixty months, while his co-defendant received a sentence of thirty months. This argument, too, was heard and rejected by the Third Circuit, which found that "[t]his disparity does not . . . demonstrate an abuse of discretion. As stated above, the District Court considered all relevant factors before

17

sentencing Bultmeyer." *Id.* at 754.   The sentencing transcript in this case clearly establishes that this Court carefully considered the relevant factors, as well as the arguments of counsel and supplied documents, in sentencing petitioner to sixty months.   As such, "the 60-month sentence imposed by the District Court was reasonable." *Id.*


## 7.  Judicial Bias

Petitioner also raises a claim of purported judicial bias, a claim he has not previously raised. "When issues are either not set forth in the statement of issues presented or not pursued in the argument section of [an appellate brief], the appellant has abandoned and waived those issues on appeal." *United States v. Ruddock*, 82 Fed. Appx. 752, 757 (3d Cir. 2003).   When such a waived or abandoned claim is raised for the first time in a §2255 motion, "a district court must apply a 'cause and actual prejudice' standard" to determine whether grounds exist to permit a petitioner to raise those points in a habeas proceeding.   *Rudow v. United States*, Civil Action No. 11-5741, 2012 WL 2891075, at *2 (D.N.J. July 16, 2012).   Thus, to succeed on a defaulted claim, a petitioner must "show both (1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."[4]   *United States v. DeRewal*, 10 F.3d

---

[4] While *Murray v. Carrier* provides an exception to the cause and actual prejudice standard in cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent," that exception is not applicable here.   *See* 477 U.S. 478, 496 (1986). Although petitioner claims he did not commit wire fraud in his motion, this claim is contradicted by the evidence in the record, including his own admissions during his plea colloquy, and his dubious claim of bias fails to present a constitutional deficiency that "probably resulted" in the conviction of an innocent.   At any rate, plaintiff provides no evidence or argument that there is "a fair probability that, in light of all the evidence . . . the trier of fact would have entertained a reasonable doubt of his guilt" as required to demonstrate actual innocence.   *See Kuhlmann v. Wilson*, 477 U.S. 436, 454-5 n. 17 (1986).

100, 103 (3d Cir. 1993).  A showing of "cause" requires that a petitioner demonstrate "some objective factor external to the defense that impeded his or her ability to raise the issue on direct appeal." *Rudow*, 2012 WL 2891075, at *2; *see also Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  "The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486.

Petitioner fails to establish cause sufficient to permit him to raise this claim in his habeas petition.  Petitioner merely claims that the trial judge lived within one of the towns affected by his fraud, and fails to provide anything external to his defense that prevented him from raising this argument prior to his habeas petition.  As Petitioner makes no effort to present cause as to why this claim was not previously raised, he may not raise that claim here.  *Rudow*, 2012 WL 2891075, at *3 (citing *Anderson v. United States*, 959 F.2d 233 (6th Cir. 1992).

## 8.  Petitioner's Allegations of an *Apprendi/Alleyne* violation

Petitioner's final argument for habeas relief is that this Court erred in finding abuse of trust and a loss amount in excess of seven million dollars in so much as these facts were neither admitted by Petitioner nor found by a jury.  Petitioner argues that, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne*, such findings increased the applicable range of sentences under the guidelines and therefore were elements that needed to be proven beyond a reasonable doubt or admitted.  Petitioner's argument, as discussed above in regard to the loss amount calculation, are misguided.  Neither the abuse of trust nor loss amount findings altered the statutory minimum or maximum penalty for conspiracy to commit wire fraud.  Both findings were aspects of a

Sentencing Guidelines calculation designed to produce a recommended sentence. As the Third Circuit has held, "*Alleyne* did not curtail a sentencing court's ability to find facts relevant in selecting a sentence *within* the prescribed statutory range." *United States v. Smith*, 751 F.3d 107 117 (3d Cir. 2014). "Factual findings for purposes of applying the Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in *Alleyne*." *United States v. Freeman*, 763 F.3d 322, 335 (3d Cir. 2014). Here, the trial court found the facts Petitioner decries as part of its advisory Guidelines calculation, and advisory sentence from which the Court decided to depart downward. As such, the facts that Petitioner challenges are not subject to *Apprendi* or *Alleyne*, and thus were properly found by this Court without a jury finding or admission by Petitioner. *Id.* Petitioner has therefore not shown grounds for habeas relief.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from the final order in a proceeding under §2255 unless the petitioner has "made a substantial showing of the denial of a constitutional right. "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As Petitioner has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

**IV. CONCLUSION**

For the reasons stated above, Petitioner's motion is DENIED, and no certificate of appealability shall issue.   An appropriate order follows.


Dated:

_____
Hon. Jose L. Linares, U.S.D.J.

21